OVERTON, Ex'or *versus* Ex'ors of MORRIS.

QUESTION IN THIS CASE.

*Fraudulent and void purchases of a debtor's estate, by his friends, for the object of assisting him; as against creditors.*

1. Where one, in insolvent circumstances, against whom a suit was pending for a large amount, had his property sold, under a trust deed; and the property was purchased by his friends and delivered to him; and, by the debtor, delivered to his son, who was of limited means, and taken into another State——it was held that, under the circumstances, there being no proof of a *bona fide* sale to the son, that the transaction was fraudulent, as against the creditor in whose favor the suit was pending: and a decree in Chancery was rendered, appropriating the property in the hands of the son's executor, to the pay ment of the judgment.

This was a bill in Chancery, filed in Lawrence Circuit Court, by Jones against Evans, the executor of Nimmo Morris, and others; and subsequently prosecuted by Overton the executor of Jones, against the present defendants, executors of Evans.

The bill charged, that Jones had prosecuted a suit, in one of the Chancery Courts of Virginia, against Dabney Morris, the father of Nimmo; that, on the 20th June, 1829, he obtained a decree against Dabney Morris, for fifty-seven thousand, four hundred and thirty-six dollars, and thirty-six cents, with interest; which decree was afterwards made final, and the further sum of eleven thousand, three hundred and one dollars, awarded to the complain-

3 v. P.                    32

ant: that, on these decrees executions issued, which were severally returned, *nulla bona;* and, that the said Dabny Morris was entirely insolvent. That, pending this suit, a sale was made, by a trustee, of certain slaves of the said Dabney Morris, under a deed, of which some were purchased for the said Dabney, by one Spencer and one Miller; and by the said Dabney, delivered to his son, Nimmo, who brought them to the State of Alabama, for the purpose, as was charged, of avoiding the just claims of the complainant. That Nimmo Morris was a young man, without the means of purchasing such a lot of slaves: that he had died insolvent, with the said slaves, (except one,) in his possession.----And, the bill prayed an account, &c.

Evans, in his answer, denied the allegations of the bill; admitted the insolvency of Dabney Morris; the limited means and youth of his son Nimmo: that Nimmo knew of his father's insolvency, and of the pendency of the suit against him; and called for proof.

The proof was, that said slaves, named in the bill, had been sold, as charged: that Spencer and Miller purchased them, for the purpose of assisting and relieving Dabney Morris: that the son, Nimmo, was not able to make a purchase to the extent of these slaves; and that they were removed, by him, to the West.

Under these facts the bill was dismissed----and a writ of error taken to this Court.

Argued by *Mr. Ormond*, for the plaintiff in error, and by *Mr. Smith*, for the defendant.

HITCHCOCK, J.—The facts of this case, so far as the matters, in the bill, answer and exhibits, can properly be noticed, appear to be, that sundry negroes, the property of Dabney Morris, which were under a deed of trust, to secure sundry creditors, were sold at public auction, by the trustee; that one of the negroes was purchased at said sale, by one Pitman C. Spencer, for the said Morris, who retained the possession of the said negro, under an agreement, that he should pay the bond, which Spencer gave to the trustee. That Spencer never claimed any property in the said negro, by virtue of said sale, though he had, subsequently, to pay the money. That sundry others of the negroes were purchased at said sale, by one Anderson P. Miller, a brother-in-law of said Morris, who gave his bond, also, to the trustee, for said negroes, which bond he paid. That said negroes were put in the possession of said Morris, who subsequently, (a short time after the sale,) sent them, by his son, Nimmo Morris, to Alabama; the sale being made in Virginia, where all the parties lived. That Nimmo Morris was a son of the said Dabney Morris. That, at the time of this sale, Dabney Morris was notoriously insolvent; and that one Lew Jones, the complainant's testator, was, at the time of the sale, prosecuting a suit, in Chancery, in the Richmond District, Virginia, by which he subsequently obtained a decree to a large amount, over fifty thousand dollars. That the negroes were sent to Alabama before this decree was obtained. That, at the time of the sale, Dabney Morris contemplated a removal, either to Alabama, or to Texas. That Nimmo Morris was, at the time of the sale, a young man of no property, but of good character, and who

had just completed a course of medical studics.—
That Miller stated, on the day of the sale, to the
trustee, that he "intended to purchase some of the
negroes; *that he was disposed to assist Dabney Morris.*"
That Nimmo Morris retained possession of the slaves
in Alabama, until his death, the date of which does
not appear.    Tnat John Evans qualified as executor;
and that he reported the estate insolvent, and, on the
first May, 1831, sold the negroes, by order of the
Orphans' Court of Lawrence county.    That, among
the claims allowed against the estate of Nimmo
Morris, is one in favor of A. P. Miller, for one thou-
sand six hundred and twenty-eight dollars; the
amount of a note, with interest upon it, of two years
and four months, amounting to two hundred and
twenty-seven dollars and eighty cents.

A bill of sale was executed, by the trustee, for the
negroes, to A. P. Miller.    There is none proven to
have been given by Miller, to Nimmo Morris; nor
is there any proof of a sale, except what is to be infer-
red, from the allowance of the claim, in his favor, by
the Orphans' Court; though a fraudulent sale is
charged in the bill—which sale is admitted by the
executor; but, which is denied, by him, to have been
fraudulent.

Spencer, who bought one of the negroes, in an-
swer to an interrogatory, states, that "Miller purchas-
ed, at the sale, a lot of negroes, which lot of negroes
was purchased for Dabney Morris, in whose posses-
sion they were put; and that they were sent, by him,
to the western country, by his son, Nimmo Mor-
ris.

The bill charges the whole proceedings, by Miller
and the two Morrises, relating to the negroes, to be

fraudulent and void; and prays, that the proceeds of the sales of the negroes, which are now in the hands of the executor of Nimmo Morris, should be applied to the payment of the decree, in his favor, against Dabney Morris. The Circuit Court dismissed the bill, at the hearing, from which a writ of error is taken, to this Court.

Although there has been a great deal of controversy, as to the doctrine of fraud, *per se*, in the sale of personal chattels, when possession does not accompany and follow the sale, there has been no question; but that, when it does remain with the vendor, it is such a badge of fraud, as will, unexplained, establish the fraud, and set aside the sale, in favor of the. creditors of the vendor.

In this view of the case, we will examine the one now under consideration. The insolvency of Dabney Morris, and his expectation soon to have a very large decree rendered against him, rendered it unsafe to hold property in his own name—that which was under a deed of trust was about to be sold by the trustee on a credit—one of his friends purchases in a part of it, for his use, under an agreement, that he shall pay the price, when it becomes due. It is not pretended by this purchaser, that he ever acquired any title. The other purchaser declares, at the sale to the trustee, that he intends to purchase, as he is disposed to assist the debtor. He does so, and gives his bond, takes a bill of sale, and, in both instances, the property remains in the possession of the debtor, and is permitted to be, by him, removed to a distant part of the Union; beyond the control of the party, and without the jurisdiction of the Court, in which the decree is about to be rendered. This pro-

perty is taken off, by the son, and is subsequently found in the possession of his executor; the son having died insolvent, having been proven never to have been worth any thing; and the only evidence of his title, at all, is the allowance, by the County Court, of a claim, for an amount perhaps equal to the value of the negroes. No proof having been given, of the time when, or actual amount of the purchase: no bill of sale, (the common evidence of title,) or other evidence, being adduced, to establish the sale. No contract of hire between the purchasers and the debtor, is pretended; and, no explanation is offered; to shew why the sale, if it was so, was made to the younger Morris—the avowed object of the purchaser, at the sale, having been to assist the debtor.

Under these facts, what would a jury be apt to say, if the question was left to them, whether the object of the parties was not to defeat the liability of this property, to the expected decree in favor of Jones.

I lay out of view the alleged sale, by Miller to the younger Morris—there is no positive evidence of it: he was in no circumstances to buy. It is not pretended, that it had taken place before he left Virginia; and, the fact, that neither Miller nor Morris can claim it, without increasing the risk of subjecting it to the debt of Jones, shews, sufficiently why the sale to him is insisted upon: for, leaving this out of view, we must conclude, that he either gave the property to Dabney Morris, that he resold it to him, or, that the purchase was a mere cover—the price of the purchase having, probably, been paid by Dabney Morris, or at least a promise given, to do so, as was done, in the purchase made by Spencer.

OVERTON, ex'or *vs.* ex'ors of MORRIS.

The counsel for the defendant in error, has referred to the case of *Kid* vs. *Rawlinson*,[a] as being precisely in point.   There, the purchase was made, at sheriff's sale, of the debtor's goods, and cash was paid for them; and, they were suffered to remain in possession of the debtor, at the same place, to enable him to carry on his business.   The defendant being soon after taken in execution, executed a bill of sale to the judgment creditor, who took possession of them.   The purchaser gave notice to the creditor, of his title.   They were subsequently sold by the creditor; and the question left to the jury, was, whether Kid, the plaintiff, had purchased the goods, with a view to defeat any execution, by any creditor of the debtor; and, the jury, being of the opinion the purchase was not made with that view, gave a verdict for him.

Lord *Eldon*, in his opinion, says—"The goods were purchased at a public sale, by a person, not a creditor, and were then lent to the original owner, for a temporary and honest purpose."   And he considers it the same as if the money had been advanced, to enable the debtor to buy the goods, and the bill of sale to stand as a security: so, he says, the jury considered it.

In that case, the money was advanced: in this, no money was paid, at the time of the sale.   In that case, it does not appear that the debtor was insolvent; in this, it does.   In that case, the property was *lent*, and so expressed, for a temporary purpose, and remained in the same place; in this, it does not appear, whether the object was a loan or a gift, and it was very soon removed beyond the reach of the cre-

a 2 Bos. & Pul. 59.

ditors, by the debtor, and a sale to an insolvent son, set up, but not proven.

There does not appear to be any thing in this case, like the one referred to; except, that the sale was public, and the purchaser not a creditor. The subsequent conduct of the parties, does not explain the transaction, so as to redeem it from the suspicions, which are attached to such cases.

If Miller bought the property for Dabney Morris, as is very probable, under the expectation of his paying for it, as Spencer did—then, like the case of Spencer, he acquired no title to it, though he may have had to pay the price himself—and, he must suffer for his kindness. If he made a *bona fide* purchase, and afterwards loaned it to Dabney Morris, for a temporary and honest purpose, he has failed to make that fact appear.

The possession, then, having remained with Dabney Morris, without a sufficient explanation, to rescue it from the suspicions which the law attaches to the case, we think the decree must be reversed; and a decree rendered against the defendant's executor, for the amount in his hands, which proceeded from the sales of the negroes in question—with the costs of the proceedings in the Court below, and in this Court, to be paid out of the other assets in the hands of the executor.